### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### BLUEFIELD DIVISION

| | |
|---|---|
| **JEAN ELIZABETH KAUFMAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 1:10-0071** |
| ) | |
| **OFFICER H. BAYNARD,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending is the United States' "Motion to Dismiss Defendant Officer Baynard and Substitute the United States" (Document No. 6.) and Motion to Dismiss for Lack of Subject Matter Jurisdiction (Document No. 8.), filed on April 22, 2010. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to the United States' Motions and submit Affidavit(s) or statements and/or other legal or factual material supporting her claims as they are challenged by the United States in moving to dismiss. (Document No. 10.) On June 24, 2010, Plaintiff filed her Responses in Opposition and Memoranda In Support. (Document Nos. 15 - 18.) The United States filed its Reply on June 28, 2010. (Document No. 20.) Having examined the record and considered the applicable law, the undersigned has concluded that the United States' Motions should be granted as to Plaintiff's FTCA claim and this matter should be referred back to the undersigned for further proceedings concerning Plaintiff's Bivens claim.

### FACTUAL AND PROCEDURAL HISTORY

On January 25, 2010, Plaintiff, formerly an inmate at FPC Alderson,[1] and acting *pro se*, filed

---

[1] The Bureau of Prisons' Inmate Locator indicates that Plaintiff was released from custody on April 22, 2010.

her Complaint in this matter claiming entitlement to relief pursuant to 42 U.S.C. § 1983.[2] (Document No. 1.) Plaintiff names the following as Defendants: (1) Correctional Officer H. Baynard, and (2) FPC Alderson.[3] (Id.) In her Complaint, Plaintiff alleges as follows:

> On January 28, 2008, I was assaulted by Officer H. Baynard. I was waiting in line at the dining hall. Inmate Brandy Stevens was in front of me and she went through the door that Baynard was holding open. Baynard began yelling at her that she entered the wrong door and demanded that she come back out of the building and go back through the other door. Neither door was marked enter or exit. I waited for Stephens to come back around and mumbled to her 'that was real important.' Baynard heard what I said to her and yelled at me, demanding my ID. He then ordered me to report to the Lieutenant's office after the meal. He instructed me to get back in line and I complied. Immediately, Baynard called me back over to the entrance and ordered me outside. As I walked outside he was screaming obscenities and threatening me. Quietly and without animosity, I said that he was speaking to me disrespectfully and to please stop. He then ordered, 'fine, put your hands on the wall.' I complied and C.O. Baynard began roughly searching me. He continued to strike at my pockets where I had paper. I turned my head to the right and told him that I wanted to speak to Captain DuPuis. Suddenly I was slammed into the wall repeatedly. I lifted my hands above my head and cried out 'Stop touching me! I want to see the Captain. Stop touching me!' He continued to slam me against the wall. He then grabbed my arm and neck and swung me around to face the opposite direction and slung me onto the ground approximately six feet away from the building. C.O. Baynard then planted his knee in my back dropping his full weight upon me. He never handcuffed me and never called for assistance even though several officers were just inside the building. Inmates could see from the window and began pounding on the window and calling for help. As the A.W., Capt. DuPuis, and other staff members came out the door, I cried out 'please someone help me.' I was snatched to my feet, still uncuffed and taken to the administration building. I gave my statement, was seen by medical and then released back to my housing unit.

(Id., p. 5.) Plaintiff claims that she has "reason to believe that FPC Alderson was aware that there were other instances with C.O. Baynard acting inappropriately with female inmates and failed to provide

---

[2] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[3] By separate Order entered this day, the Court has granted Plaintiff's "Motion to Amend Wording of U.S.C. 1983 Submission to Include Warden Amber Nelson in Substitution of FPC Alderson" (Document No. 19.).

2

proper security and safety." (Id.) As a result of the above incident, Plaintiff states that she suffered "possible permanent damage to her right leg, left shoulder, left elbow and back." (Id., p. 7.) Plaintiff further states that she suffers from post traumatic stress disorder [PTSD] and "this incident exacerbated my PTSD symptoms and created new terrors/triggers for me." (Id., p. 5.) Plaintiff requests monetary and declaratory relief. (Id., p. 7.)

Plaintiff paid the $350.00 filing fee on January 28, 2010.[4] (Document No. 3.) The Clerk issued Summons on February 8, 2010. (Document No. 4.) On April 22, 2010, the United States filed a "Motion to Dismiss Defendant Baynard and Substitute the United States" and Memorandum of Law in Support. (Document Nos 6 and 7.) The United States requests that the Court "(1) dismiss Officer H. Baynard from all alleged common law tortious acts (i.e., assault and battery) based upon the Certification by the United States Attorney that he was acting within the scope of his office or employment at the time of the incident out of which the claim arose; and (2) substitute the United States in his place as the defendant." (Document No. 6, p. 1.) In support of the Motion, the United States attaches a "Certification" by the United States Attorney. (Document No. 6-1.)

Also on April 22, 2010, the United States filed a Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction and Memorandum in Support. (Document Nos. 8 and 9.) The United States argues that there is a lack of jurisdiction because "the plaintiff has not exhausted her administrative remedies pursuant to the Federal Tort Claims Act." (Document No. 8, p. 1.)

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff

---

[4] In her cover letter, Plaintiff states that "[y]ou will find enclosed, the necessary forms and information to file my 42 USCS § 1983. . . . I am filing this case pro se and will need additional time to gather information and evidence to prepare for this case. However, I wanted to be sure that the initial filing was entered within the statute of limitations for this incident. . .." (Document No. 1-1, p. 1.)

on April 23, 2010, advising her of the right to file a response to the United States' Motions to Dismiss. (Document No. 10.) On June 24, 2010, Plaintiff filed her Responses in Opposition to the United States' Motions to Dismiss. (Document Nos. 15 - 18.) In her "Response to Motion to Dismiss Officer H. Baynard and Substitute the United States," Plaintiff contends that "the only plausible occurrence where the United States Attorney should certify that Officer Baynard was acting within the scope of his employment is if the United States attorney is taking responsibility for not training Officer Baynard in proper procedure." (Document No. 15, p. 1.) Plaintiff further argues as follows:

> This plaintiff is supposed to be protected from physical danger, excessive force, assault, and threats to life and liberty under constitutional rights. Simply because Officer Baynard was employed by and on the clock of the United States Government at the time of this altercation, does not allow him to step outside the bounds of the laws, his training and BOP procedure. What actually happened during that altercation required medical and psychological attention, and went well above and beyond restraint, more appropriately excessive force and more equivocally assault.

(Id., p. 2.) In her Memorandum in Support, Plaintiff continues to argue that Defendant Baynard was not acting within the scope of his employment. (Document No. 16.) Specifically, Plaintiff contends that "the statements of more than six witnesses, the medical report reflecting 'multiple strike marks,' Officer Baynard's own statement revealing that he at no time felt threatened by this plaintiff, would reflect someone who was not acting within the scope of his employment." (Id., p. 2.) Plaintiff asserts that Defendant Baynard was "not acting according to the Federal Bureau of Prison policy statement regarding the use of force and restraint." (Id.) Finally, Plaintiff presents arguments supporting her claim that Defendant Baynard used excessive force in violation of her constitutional rights. (Id., pp. 2 - 3.)

In her "Response to Motion to Dismiss for Lack of Subject Matter Jurisdiction," Plaintiff argues that she properly exhausted her administrative remedies by filing her BP 8.5, 9, 10, and 11. (Document No. 17, pp. 1 - 2.) Plaintiff further contends that "the administrative tort claim was required

4

to be filed within 2 years of the incident [and] Kaufman was still incarcerated and had no ability to supply a Standard Form 95 with a SUM CERTAIN when a medical professional (who might have been able to assess the damages, necessary treatments, and speculate projected medical costs) was not available to her at that time." (Document No. 18, p. 2.) Plaintiff therefore states that she has "submitted and completed the Administrative Remedy process as far as possible and available to her." (Document No. 17, p. 2.) Finally, Plaintiff states that she "is asserting that her 4th, 8th, and 14th Amendment rights were violated during her altercation with the Defendant Officer H. Baynard." (Document No. 18, p. 1.)

In support, Plaintiff attaches the following Exhibits: (1) A copy of Program Statement 552.27 (Document No. 17-1, pp. 2 - 5.); (2) A copy of the "United States Penitentiary Hazelton Request for Administrative Remedy Informal Resolution Form" dated February 8, 2008, complaining that Defendant Baynard used excessive force during her incarceration at FPC Alderson (Id., pp. 6 - 7.); (3) A copy of the Response stating that "[t]he allegation was referred to the appropriate office for investigation" (Id., p. 8.); (4) A copy of Plaintiff's "Request for Administrative Remedy" dated March 3, 2008, requesting the outcome of the investigation of Defendant Baynard (Remedy No. 487253-F1) (Id., p. 9.); (5) A copy of Plaintiff's "Request for Administrative Remedy" dated March 27, 2008, complaining that Defendant Baynard used excessive force (Remedy No. 487253-F2) (Id., p. 10.); (6) A copy of Warden Joe D. Driver's Response to Administrative Remedy No. 487253-F2 dated April 9, 2008 (Id., p. 11.); (7) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated May 10, 2008 (Remedy No. 487253-R1) (Id., p. 12.); (8) A copy of Regional Director K.M. White's Response to Remedy No. 487253-R1 dated June 2, 2008 (Id., p. 13.); (9) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated November 5, 2009 (Remedy No. 487253-R1) (Id., pp. 14 - 15.); (10) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated December

18, 2008 (Remedy No. 487253-A3) (Id., pp. 16 - 17.); (11) A copy of an e-mail from Lori Brown, Legal Instruments Examiner for the BOP, stating that a response was provided to Remedy No. 487253-R1 on June 2, 2008 (Id., p. 18.); (12) A copy of a "Rejection Notice - Administrative Remedy" dated January 7, 2009, concerning Remedy No. 487253-A2 (Id., p. 19.); (13) A copy of a Memorandum dated December 26, 2009, from Susan Folk regarding the rejection of Plaintiff's BP 11 (Id., p. 20.); (14) A copy of Administrator Harrell Watts' Response to Remedy No. 487253-A3 dated April 13, 2009 (Id., p. 21.); and (15) A copy of a Memorandum from C. Henderson dated September 10, 2009, regarding the Unit Discipline Committee Hearing (Id., p. 22.)

On June 28, 2010, the United States filed its Reply. (Document No. 20.) The United States argues as follows: (1) "It is clear from Plaintiff's responses that it is her intent that her complaint be construed as a Bivens action against Officer H. Baynard" (Id., p. 1.); (2) "Plaintiff's responses confuse the FTCA's scope of employment certification by the United States Attorney with the qualified immunity defense which can be asserted in a Bivens action" (Id.); (3) Plaintiff fails to allege facts sufficient to challenge the United States Attorney's certification of scope because "Plaintiff's allegations show that Officer Baynard was going about his duties as an employee of the United States" (Id., p. 2.); (4) "To resolve the FTCA/Bivens pleading confusion, the Court should dismiss Officer Baynard from any common law claims in the complaint, substitute the United States and dismiss the United States, without prejudice, so that plaintiff may exhaust her FTCA remedy if she so desires" (Id., p. 3.); and (5) "The Plaintiff can then amend her complaint and allege Bivens as her cause of action" (Id., p. 4.).

**THE STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129

S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

## DISCUSSION

**A.     The United States as a Party.**

In its Motion, the United States argues that Defendant Baynard should be dismissed and the United States substituted as the Defendant. In support, the United States Attorney filed a "Certification" stating that Defendant Baynard was acting within the scope of his employment. In Response, Plaintiff contends that Defendant Baynard's conduct was improper and therefore exceeded the scope of his employment. The United States filed a Reply arguing that "Plaintiff's allegations show that Officer Baynard was going about his duties as an employee of the United States [and] [t]he fact that plaintiff alleges that he was doing those duties improperly does not change the scope of employment determination." (Document No. 20, p. 2.)

The Federal Tort Claims Act [FTCA], 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 2671, *et seq.*, authorizes suits against the United States for damages for injuries or loss of property or personal injury

or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred. The FTCA provides at 28 U.S.C. § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

Inmates may file claims of liability against the United States but may not assert claims of personal liability against prison officials for violations of their constitutional rights under the FTCA. Carlson v. Green, 446 U.S. 14, 21 - 23, 100 S.Ct. 1468, 1472 -74, 64 L.Ed.2d 15 (1980). In order to maintain a case against the United States under the FTCA, Plaintiff must demonstrate that her action is permissible under the FTCA and satisfies the necessary elements of a tort claim cognizable under law of the State in which the action accrued.

The United States attaches a "Certification" by the United States Attorney stating that "[o]n the basis of the information now available with respect to the allegations referred to therein, Officer H. Baynard was acting within the scope of his employment as an employee of the United States at the time of the incident out of which the claim arose."[5] (Document No. 6-1.) A United States Attorney's

---

[5] Title 28 U.S.C. § 2679(d)(1) provides as follows:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim is a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

certification "is conclusive unless challenged." Gutierrez de Martinez v. Drug Enforcement Admin., 111 F.3d 1148, 1153 (4th Cir. 1997). "When the certification is challenged, it serves as prima facie evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment." Id.; Also see Maron v. United States, 126 F.3d 317, 323 (4th Cir. 1997). In determining whether certification is proper, the Court reviews the question *de novo*. Gutierrez, 111 F.3d at 1154. The plaintiff must present "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation." Id. at 1155. If the plaintiff presents evidence satisfying her burden of proof, the defendant may come forward with evidence in support of the certification. Id. The Court reviews the "certification, the pleadings, the affidavits, and any supporting documentary evidence" for issues of material fact. Id. "Only if the district court concludes that there is a genuine question of fact material to the scope-of-employment issue should the federal employee be burdened with discovery and evidentiary hearing." Id. In determining whether a federal employee was acting within the scope of his or her employment, the Court applies the law of the state where the conduct occurred. Id. at 1156(citing Jamison v. Wiley, 14 F.3d 222, 227 n. 2 (4th Cir. 1994).

The undersigned notes that it is undisputed that Defendant Baynard's alleged misconduct occurred at FPC Alderson, which is located in Alderson, West Virginia. Thus, the Court will apply the law of the State of West Virginia in determining whether Defendant Baynard was acting within the scope of his employment. The West Virginia Supreme Court has defined "scope of employment" as "a relative term and requires a consideration of surrounding circumstances, including the character of the employment, the nature of the wrongful deed, the time and place of its commission and the purpose of the act." Foodland v. State ex rel. W. Va. Dept. of Health and Human Res., 207 W.Va. 392, 397, 532, S.E.2d 661, 665 (2000). Furthermore, the West Virginia Supreme Court explained that an act is

within the scope of employment if:

> (1) It is something fairly and naturally incident to the business and (2) it is done while the servant was engaged upon the master's business and is done, although mistakenly or ill-advisedly, with a view to further the master's interest, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent and personal motive on the part of the servant to do the act upon his own account.

Id.

In the instant case, Plaintiff alleges that Defendant Baynard engaged in improper conduct while working as a correctional officer at FPC Alderson. Plaintiff admits that she made a defiant comment following Defendant Baynard's admonishment of another inmate. As a result, Plaintiff alleges that Defendant Baynard ordered her to exit the dining hall and he began "screaming obscenities and threatening [her]." When Plaintiff asked Defendant Baynard to cease his improper conduct, Plaintiff contends that Defendant Baynard "slammed [her] into the wall" and began conducting a "rough" search. Plaintiff states that she asked Defendant Baynard to "stop touching [her]" and he allegedly threw her to the ground and "then planted his knee in [her] back dropping his full weight." Based upon the foregoing, the undersigned finds that Plaintiff has failed to establish by a preponderance of the evidence that Defendant Baynard was acting outside the scope of his employment as defined by West Virginia law. Defendant Baynard's actions were "fairly and naturally incident to the business" of maintaining order and security within a prison.[6] Although Plaintiff contends that Defendant Baynard used an unnecessary amount of force, a person is acting within the scope of his employment if his conduct results "from some impulse or emotion which naturally grew out of, or was incident to the attempt to perform the master's business." Thus, even assuming that Defendant Baynard's actions may

---

[6] The undersigned notes that there appears to be no material issue of fact concerning the issue of proper certification. Based upon allegations contained in Plaintiff's Complaint, the United States filed its certification stating that Defendant Baynard was acting within the scope of his employment.

have escalated to improper conduct, he was clearly acting within the scope of the his employment as a correctional officer when attempting to search and restrain Plaintiff. Further, there is no evidence or allegation that Defendant Baynard's conduct was the result of some external, independent, or personal motive. See LeRose v. United States, 285 Fed.Appx. 93 (4th Cir. 2008)(finding that a correctional officer's action of extorting money from prisoners was beyond the scope of his employment because the conduct was for the officer's own benefit and not intended to benefit the Bureau of Prisons or the United States). The undersigned, therefore, recommends that the "United States' Motion to Dismiss Officer H. Baynard as a Defendant and Substitute the United States of America" (Document No. 6.) be granted as to Plaintiff's FTCA claim.

**B.     Exhaustion of Administrative Remedies.**

In its Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction, the United States argues that "the plaintiff has not exhausted her administrative remedies pursuant to the Federal Tort Claims Act." (Document Nos. 8 and 9.) In response, Plaintiff claims that she properly filed her administrative remedies and attaches copies of her "BP 8.5, 9, 10, and 11." (Document Nos. 17 and 17-1.) Plaintiff further alleges that it was impossible for her to file the Standard Form 95 because she did not have access to a "medical professional capable of providing a SUM CERTAIN." (Document Nos. 17 and 18.)

The Federal Tort Claims Act is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. See 28 U.S.C. § 2675(a).[7] See also Bellomy v. United States, 888 F.

---

[7] Title 28 U.S.C. § 2675(a) provides as follows:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the

11

Supp. 760 (S.D.W.Va. 1995). Filing a timely administrative claim is jurisdictional and cannot be waived. Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) (citing Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986); Muth v. United States, 1 F.3d 246 (4th Cir. 1993). Thus, before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.115 and 543.30 to 543.32. The administrative process which inmates must exhaust when they have complaints under the FTCA is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. Id., § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, Id., §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, she may file suit in the District Court within six months of the mailing of the denial. Id., § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

Based upon a review of the record, the undersigned finds that Plaintiff failed to properly exhaust her administrative remedies pursuant to the FTCA. Although Plaintiff contends that she properly filed administrative remedies with the prison, the exhaustion requirements concerning FTCA

---

negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

and Bivens actions differ.[8] Having examined Plaintiff's exhibits, the Court finds that the administrative remedies filed by Plaintiff relate to the exhaustion of her Bivens claim, not her FTCA claim. Plaintiff fails to produce any documents indicating that she exhausted her FTCA claim. Plaintiff, however, argues that she was unable to file a Standard Form 95 because she did not have access to a "medical professional capable of providing a SUM CERTAIN." To the extent Plaintiff claims that she was

---

[8] Exhaustion requirements concerning FTCA and *Bivens* actions differ. *See Davis v. United States*, 2007 WL 3473275 (N.D.W.Va. Nov. 13, 2007); *Murphy v. Inmate Systems Management*, 2008 WL 793631 (S.D.W.Va. Mar. 20, 2008). For *Bivens* purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." *Dale v. Lappin*, 376 F.3d at 655 (internal citations omitted); *also see Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. *Id.* Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. *Id.*, § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. *Id.*, § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. *Id.*, § 542.15(a) and (b). If the inmate's Request went initially to the Regional Director, the inmate may appeal an unfavorable response to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. *Id.*, § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. *Id.*, § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. *Id.*, § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. *Id.*, § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. *Id.*, § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. *Id.*, § 542.17(c).

unable to exhaust her FTCA claim because she could not determine a "sum certain," the undersigned finds this claim to be without merit. In <u>Ahmed v. United States</u>, 30 F.3d 514 (4th Cir. 1994), the Fourth Circuit rejected plaintiffs' assertions that it was impossible for them to state a "sum certain" because the extent of their injuries were unknown. <u>Ahmed v. United States</u>, 30 F.3d 514, 517-18 (4th Cir. 1994). The Fourth Circuit explained as follows:

> This contention . . . overlooks the flexibility provided by the FTCA in giving claimants ample opportunity to amend their claims as the evidence develops. *See* 28 U.S.C. § 2675(b), 32 C.F.R. § 750.28. The [Plaintiffs] need only have presented some specific valuation of their claims, and their failure to do so means that they did not present the claim and consequently did not exhaust their administrative remedies.

<u>Id.</u> Further, this Court has defined "sum certain" to mean "some specific valuation of the claim, or information which could be used to estimate the claim." <u>Berlin v. United States</u>, 9 F.Supp.2d 648 (S.D.W.Va. 1997)(J. Staker)(citation and quotations omitted). Based on the foregoing, the undersigned finds that Plaintiff's alleged inability to contact a medical professional did not make it impossible for her to exhaust her FTCA claim. Even assuming Plaintiff did not have access to a medical professional, Plaintiff could have (1) stated a "sum certain" and amended her Complaint as the case developed, or (2) provided information that could have been used to estimate her claim. Accordingly, the undersigned recommends that the United States' Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction (Document No. 8.) be granted.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the United States' Motion to Dismiss Defendant Officer Baynard and Substitute the United States (Document No. 6.) as to Plaintiff's FTCA claim, **GRANT** the United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Document No. 8.), and **REFER** this matter back to the undersigned for further

proceedings regarding Plaintiff's Bivens claim.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*.

Date: December 6, 2010.

R. Clarke VanDervort
United States Magistrate Judge