**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **JEAN ELIZABETH KAUFMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:10-0071** |
| | ) | |
| **OFFICER H. BAYNARD, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court are the United States' Motion to Dismiss (Document No. 54.), Defendant Baynard's Motion to Dismiss (Document No. 56.), and Defendants Nelson, Landen, Dupris, Lowe, Painter, and Engleman's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document No. 66.). The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file responses to Defendants' Motions and submit Affidavit(s) or statements and/or other legal or factual material supporting her claims as they are challenged by Defendants in moving to dismiss. (Document Nos. 59 and 68.) On May 13, 2011, Plaintiff filed her Responses in Opposition to the United States and Defendant Baynard's Motions to Dismiss. (Document Nos. 62 - 64.) Defendant Baynard filed his Reply on May 17, 2011. (Document No. 65.) On July 11, 2011, Plaintiff filed her Response in Opposition to Defendants Nelson, Landen, Dupris, Lowe, Painter, and Engleman's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Document Nos. 69 - 70.) Having examined the record and considered the applicable law, the undersigned has concluded that the United States and Defendants' Motions should be granted.

## FACTUAL AND PROCEDURAL HISTORY

On January 25, 2010, Plaintiff, formerly an inmate at FPC Alderson,[1] and acting *pro se*,[2] filed her Complaint in this matter claiming entitlement to relief pursuant to 42 U.S.C. § 1983.[3] (Document No. 1.) Plaintiff names the following as Defendants: (1) Correctional Officer H. Baynard, and (2) FPC Alderson. (Id.) In her Complaint, Plaintiff alleges as follows:

> On January 28, 2008, I was assaulted by Officer H. Baynard. I was waiting in line at the dining hall. Inmate Brandy Stevens was in front of me and she went through the door that Baynard was holding open. Baynard began yelling at her that she entered the wrong door and demanded that she come back out of the building and go back through the other door. Neither door was marked enter or exit. I waited for Stephens to come back around and mumbled to her 'that was real important.' Baynard heard what I said to her and yelled at me, demanding my ID. He then ordered me to report to the Lieutenant's office after the meal. He instructed me to get back in line and I complied. Immediately, Baynard called me back over to the entrance and ordered me outside. As I walked outside he was screaming obscenities and threatening me. Quietly and without animosity, I said that he was speaking to me disrespectfully and to please stop. He then ordered, 'fine, put your hands on the wall.' I complied and C.O. Baynard began roughly searching me. He continued to strike at my pockets where I had paper. I turned my head to the right and told him that I wanted to speak to Captain DuPuis. Suddenly I was slammed into the wall repeatedly. I lifted my hands above my head and cried out 'Stop touching me! I want to see the Captain. Stop touching me!' He continued to slam me against the wall. He then grabbed my arm and neck and swung me around to face the opposite direction and slung me onto the ground approximately six feet away from the building. C.O. Baynard then planted his knee in my back dropping his full weight upon me. He never handcuffed me and never called for assistance even though several officers

---

[1] The Bureau of Prisons' Inmate Locator indicates that Plaintiff was released from custody on April 22, 2010.

[2] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[3] In her cover letter, Plaintiff states that "[y]ou will find enclosed, the necessary forms and information to file my 42 USCS § 1983. . . . I am filing this case pro se and will need additional time to gather information and evidence to prepare for this case. However, I wanted to be sure that the initial filing was entered within the statute of limitations for this incident. . .." (Document No. 1-1, p. 1.)

were just inside the building. Inmates could see from the window and began pounding on the window and calling for help. As the A.W., Capt. DuPuis, and other staff members came out the door, I cried out 'please someone help me.' I was snatched to my feet, still uncuffed and taken to the administration building. I gave my statement, was seen by medical and then released back to my housing unit.

(Id., p. 5.) Plaintiff claims that she has "reason to believe that FPC Alderson was aware that there were other instances with C.O. Baynard acting inappropriately with female inmates and failed to provide proper security and safety." (Id.) As a result of the above incident, Plaintiff states that she suffered "possible permanent damage to her right leg, left shoulder, left elbow and back." (Id., p. 7.) Plaintiff further states that she suffers from post traumatic stress disorder [PTSD] and "this incident exacerbated my PTSD symptoms and created new terrors/triggers for me." (Id., p. 5.) Plaintiff requests monetary and declaratory relief. (Id., p. 7.)

Plaintiff paid the $350.00 filing fee on January 28, 2010. (Document No. 3.) The Clerk issued Summons on February 8, 2010. (Document No. 4.) On April 22, 2010, the United States filed a "Motion to Dismiss Defendant Baynard and Substitute the United States" and Memorandum of Law in Support. (Document Nos 6 and 7.) Also on April 22, 2010, the United States filed a Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction and Memorandum in Support. (Document Nos. 8 and 9.) The United States argued that there is a lack of jurisdiction because "the plaintiff has not exhausted her administrative remedies pursuant to the Federal Tort Claims Act." (Document No. 8, p. 1.)

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on April 23, 2010, advising her of the right to file a response to the United States' Motions to Dismiss. (Document No. 10.) On June 24, 2010, Plaintiff filed a "Motion to Amend Wording of U.S.C. 1983 Submission to Include Warden Amber Nelson in Substitution of FPC Alderson."

(Document No. 19.) Also on June 24, 2010, Plaintiff filed her Responses in Opposition to the United States' Motions to Dismiss. (Document Nos. 15 - 18.) On June 28, 2010, the United States filed its Reply. (Document No. 20.)

On December 6, 2010, the Court granted Plaintiff's "Motion to Amend Wording of U.S.C. 1983 Submission to Include Warden Amber Nelson in Substitution of FPC Alderson." (Document No. 24.) By Proposed Findings and Recommendation also entered on December 6, 2010, the undersigned recommended that "the District Court grant the United States' Motion to Dismiss Defendant Officer Baynard and Substitute the United States (Document No. 6.) as to Plaintiff's FTCA claim, grant the United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Document No. 8.), and refer this matter back to the undersigned for further proceedings regarding Plaintiff's Bivens claim." (Document No. 25.)

On January 4, 2011, Plaintiff filed her "Response to Proposed Findings & Recommendations." (Document No. 28.) On January 14, 2011, Plaintiff filed a Motion to Extend Time to Amend Complaint (Document No. 35.), "Motion to Amend Case from 28 USC 1983 to Bivens" (Document No. 36.), and "Motion to Amend Case" (Document No. 37.). By Order entered on January 18, 2011, the Court granted Plaintiff's Motion to Extend Time to Amend Complaint. (Document No. 39.) On January 21, 2011, Plaintiff filed a "Motion to Amend Case" (Document No. 41.) and "Motion for Leave to Amend" (Document No. 42.). In her "Motion for Leave to Amend," Plaintiff clarified that she is requesting her Complaint be amended to include the following defendants: (1) Alice Lowe, Assistant Warden; (2) Captain Vicki Dupris; (3) James Engleman, Unit Manager; (4) SIS Lieutenant Painter; and (5) Lieutenant Landen. (Document No. 42.)

On February 4, 2011, Plaintiff filed her Amended Complaint. (Document No. 45.) In her

4

Amended Complaint, Plaintiff asserts allegations against Defendants Baynard, Dupris, Lowe, Painter, Nelson, and Engleman. (Id.) First, Plaintiff alleges that Defendant Baynard violated her First, Fourth, and Eighth Amendment Rights. (Document No. 45, pp. 1 - 10.) Plaintiff explains that on January 28, 2008, Defendant Baynard accused Plaintiff of "insolence to an officer." (Id., p. 1 - 2.) Plaintiff explains that she made a comment to another inmate, Brandy Wyatt, and Defendant Baynard over heard the comment. (Id.) Plaintiff explains that she was not insolent to Officer Baynard because she was speaking to Brandy Wyatt.[4] (Id.) Plaintiff contends that Defendant Baynard violated her First Amendment rights by instructing Plaintiff to "shut up" and "never speak in my presence again." (Id., p. 4.) Next, Plaintiff complains that Defendant Baynard conducted an unreasonable search of her person in violation of the Fourth Amendment rights. (Id., pp. 4 - 7.) Plaintiff explains that she requested to speak to the Captain because Officer Baynard conducted the search in a rough manner. (Id., p. 2.) Plaintiff contends that Officer Baynard became angry and slammed her to the floor causing "marks on my neck, bruises down the back of both arms, several bruises on my right lower back near the rib cage, bruises on my upper back, and a mark on my leg that appears to be a shoe print." (Id.) Thus, Plaintiff claims that Defendant Baynard violated her Eighth Amendment rights by using unnecessary and excessive force. (Id., p. 2, 7 - 9.) Plaintiff explains that Officer Baynard's use of force was excessive based on the following: "I did not, in any way, resist. I did state that he was supposed to give me a warning before grabbing me in a rough manner. I submit that even if all I had said, "don't touch me," as he asserted, it should sound (to a reasonable person) like I'm scared and threatened by the situation. Please note that my arms were above my head the entire time, as I attempted to show a sign of surrender." (Id., p. 2.) As a result

_____

[4] Plaintiff notes that she incorrectly named Brandy Wyatt as Brandy Stephens in previous documents. (Document No. 45, p. 1.)

of Officer Baynard's conduct, Plaintiff asserts that she has "limited mobility in my left arm, pain in my spine in the area near the bruises, numbness and tingling in my right thigh." (Id.)

Next, Plaintiff contends that Defendants Landen, Painter, Dupris, Lowe, and Nelson violated her constitutional rights by transferring her to SFF Hazelton. (Id., p. 11 - 16, 18.) Plaintiff states she was improperly transferred to SFF Hazelton because the sentencing "court recommended that Kaufman participate in the residential drug program" and "recommended that Plaintiff Kaufman be assigned to FPC Alderson."[5] (Id., p. 24.) Plaintiff complains that even though the above Defendants were aware of her injuries, Plaintiff was placed in the Special Housing Unit upon arriving at SFF Hazelton. (Id., p. 11 - 16, 18.) Plaintiff explains that her 90-day placement in SHU resulted in "an unusual hardship" because "movement from Plaintiff Kaufman's cell was a painful process on an injured shoulder," "Plaintiff Kaufman was not allowed to mingle with other prisoners," "the cells were much more restrictive than regular population experienced," and "plaintiff was only able to

---

[5] Federal prisoners have no constitutional or inherent right to participate in rehabilitative programs while incarcerated. *See Moody v. Daggett*, 429 U.S. 78, 88, n. 9, 97 S.Ct. 274, 279, n. 9, 50 L.Ed.2d 236 (1976)("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process."). The classification and transfer of federal prisoners falls within the broad discretion of the Bureau of Prisons and a Court lack authority to order that a prisoner be confined to any particular institution. *See* 18 U.S.C. § 3621(b)(the BOP shall designate the place of an inmate's confinement); *also see Meachum v. Farno*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)(the transfer of a convicted and sentenced inmate is within the sound discretion of the BOP); *United States v. Williams*, 65 F.3d 301, 307 (2nd Cir. 1995)("A sentencing court has no authority to order that a convicted defendant be confined in a particular facility, much less placed in a particular treatment program; those decisions are within the sole discretion of the Bureau of Prisons."); *Hinton v. Federal Bureau of Prisons*, 2009 WL 3347158, * 4 n. 5 (S.D.W.Va. Oct. 14, 2009)("Inmates . . . have no constitutional right to be housed in any particular prison or jail, regardless of security classification.").

make one phone call every 30 days." (Id., pp. 14, 16, 18, 19.) Finally, Plaintiff complains that Defendants Landen, Painter, Dupris, Lowe, and Nelson failed to ensure that Plaintiff's personal property and medical records were transferred to SFF Hazelton. (Id., p. 14, 16, 18 - 19, 24 - 25.)

Next, Plaintiff asserts that Defendant Landen violated Plaintiff's right to due process by refusing to take witness statements concerning the January 28, 2008, incident. (Id., pp. 11 - 13.) Plaintiff complains that Defendant Lowe failed to respond to requests for information from Plaintiff's husband. (Id., p. 16.) Finally, Plaintiff alleges that Defendant Engleman failed to "subscribe to professional conduct" when acting as a member of the Unit Discipline Committee regarding Plaintiff's disciplinary matter.[6] (Id., p. 26.) Plaintiff explains that Defendant Engleman

---

[6] The Incident Report dated January 28, 2008, described the incident as follows (Document No. 45-1, p. 16.):

> While conducting the feeding of inmates, I observed an inmate enter the wrong door of CDR. I ordered the inmate to exit the CDR and enter through the correct door. The inmate complied, but another inmate (Kaufman 75086-083) commented in a sarcastic tone, "that was real important." I ordered Kaufman over and instructed her to refrain from making comments that under mind the authority of staff. Inmate Kaufman stated, "she was allowed to say anything she wanted because of her civil rights." I informed Kaufman this behavior wouldn't be tolerated. Kaufman continued to argue about her civil rights and freedom of speech. I ordered Kaufman to give me her I.D. and report to the lieutenant's office after she had eaten lunch. Kaufman gave me her I.D., but continued to be argumentative instead of going to mainline. It was apparent that Kaufman was going to continue this type of behavior. At this time, I ordered Kaufman to turn around and place her hands on the wall. Kaufman complied with my order. I started to pat Kaufman down and she continued to be argumentative. Once I reached the right pocket of her jacket, she removed her right hand from the wall and was attempting to turn and face me. I ordered Kaufman to put her hand back on the wall. Kaufman failed to comply and attempted to pull away, I grabbed Kaufman's arm and placed it back on the wall. Kaufman continued to resist and began yelling, 'Don't touch me" over and over. I was able to get Kaufman pinned to the wall. Kaufman and I slide down the wall and I finally placed Kaufman on the ground. At this time, additional staff arrived and took control of Kaufman. I was unable to radio for assistance while trying to control Kaufman. Inmate Kaufman has a history of this type of behavior. I have tried numerous time in the past to explain to her why this won't be tolerated.

"would not take my witness statements into consideration," "recommended that another charge be added," and "recommended much harsher penalties than the disciplinary report required." (Id., pp. 26, 28.)

Also on February 4, 2011, Plaintiff filed her "Amended Response to Proposed Findings & Recommendations." (Document No. 44.) By Memorandum Opinion and Order entered on March 31, 2011, United States District Judge David A. Faber adopted the undersigned's recommendation and referred the matter back to the undersigned for further proceedings on Plaintiff's Bivens claim. (Document Nos. 46 and 47.) By Order entered April 4, 2011, the undersigned granted Plaintiff's "Motion to Amend Case" (Document Nos. 37 and 41.) and "Motion for Leave to Amend" (Document No. 42.), and denied as moot Plaintiff's "Motion to Amend Case from 28 USC 1983 to Bivens" (Document No. 36.). (Document No. 48.)

On April 14, 2011, the United States filed a Motion to Dismiss and Memorandum in Support. (Document Nos. 54 and 55.) Specifically, the United States requests "plaintiff's Bivens action against defendants Baynard, Warden Amber Nelson, Lt. Landen, Cpt. Dupris, Associate Warden Alice Lowe, and SIS Painter in their official capacity be dismissed." (Document No. 55.) Also on April 14, 2011, Defendant Baynard filed a Motion to Dismiss and Memorandum in Support. (Document Nos. 56 and 57.) Specifically, Defendant Baynard argues that Plaintiff's Bivens action against him is prohibited by the judgment bar of the FTCA, 28 U.S.C. § 2676. (Document No. 57.)

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on April 15, 2011, advising her of the right to file a response to the United States' Motion to Dismiss and Defendant Baynard's Motion to Dismiss. (Document No. 59.) On May 13, 2011, Plaintiff filed her Responses in Opposition. (Document Nos. 62 - 64.) In her "Response to United States' Motion

to Dismiss," Plaintiff "asserts that there is a cause of action for a <u>Bivens</u> claim against the Defendants in their individual capacities and prays the court proceeds as such in allowing the <u>Bivens</u> claim to be heard as to the individual actions (under the color of Federal law) of each defendant." (Document No. 64.) In her "Response to Baynard's Motion to Dismiss," Plaintiff argues that "[w]hen an FTCA claim is dismissed for lack of subject matter rather than based on its merits, 28 U.S.C. § 2676 does not apply as seen in <u>Pesnell v. Arsenault</u>, 490 F.3d 1158 (9th Cir. 2007)." (Document Nos. 62 and 63.) On May 17, 2011, Defendant Baynard filed his Reply arguing that "Plaintiff's reliance on <u>Pesnell v. Arsenault</u>, 490 F.3d 1158 (9th Cir. 2007), is misplaced. (Document No. 65.)

On June 3, 2011, Defendants Nelson, Landen, Dupris, Lowe, Painter, and Engleman filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 66 and 67.) Specifically, Defendants argue as follows: (1) "Plaintiff has failed to exhaust her administrative remedies on her new claims as required by law" (Document No. 67, pp. 5 - 8.) (2) "Plaintiff's new claims do not relate back to the claims made in the original complaint, and thus, are time barred" (<u>Id.</u>, pp. 8 - 10.); (3) "Plaintiff's claims against Defendant Nelson fail to state a claim upon which relief could be granted as Plaintiff alleges no involvement by this Defendant in the original use of force claim" (<u>Id.</u>, p. 10.); and (4) "Defendants are entitled to qualified immunity" (<u>Id.</u>, pp. 10 - 16.). In support, Defendants attach as an Exhibit the Declaration of Sharon Wahl. (Document No. 66-1.)

Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on June 6, 2011, advising her of the right to file a response to Defendants Nelson, Landen, Dupris, Lowe, Painter, and Engleman's "Motion to Dismiss, or in the Alternative, Motion for Summary

Judgment." (Document No. 68.) On July 11, 2011, Plaintiff filed her Response in Opposition and

Memorandum in Support. (Document Nos. 69 - 70.) Specifically, Plaintiff objects to Defendants'

Motion based upon the following (Document No. 69.):

(1)     Administrative remedy was sought for use of excessive force and all new claims are related to that incident, in that each one of them is a direct reaction to the incident involving excessive force.

(2)     Plaintiff's claims against Defendant Nelson are valid and a direct result of the same incident. Warden Amber Nelson was Defendant Baynard's superior officer and as such is responsible for supporting the procedures and guidelines set by the Bureau of Prisons. By sanctioning the Plaintiff's transfer as a direct response, Defendant Nelson was in a position to correct Officer Baynard's unconstitutional behavior and was responsible to ensure that Defendant Baynard had received proper training in how to address inmates.

(3)     The only defendant that may have qualified immunity would be Defendant Engleman and only because his action had no bearing on the final outcome of the incident report or my treatment. It is clear that his intent was malicious.

On September 12, 2011, Plaintiff filed a "Motion to Revive Plaintiff's FTCA (28 U.S.C.

1346(b)) Claim." (Document No. 73.) In support, Plaintiff states that she "has completely exhausted

her administrative remedy requirements and seeks to revive her FTCA claim against the U.S.

Government, who is being substituted for Defendant Baynard."[7] (Id.)

On September 26, 2011, Defendant Baynard filed a "Notice of Additional Authority."

(Document No. 74.) In support of his Motion to Dismiss, Defendant Baynard attaches a copy the

Memorandum Opinion and Order entered on September 23, 2011, in Sanchez v. Felts, Civil Action

No. 5:07-cv-0355 (S.D.W.Va. Sep. 23, 2011)(J. Johnston). (Id., pp. 3 - 18.)

---

[7] By separate Order entered this day, the undersigned has construed Plaintiff's "Motion to Revive Plaintiff's FTCA Claim" as a civil action filed under FTCA and directed the Clerk to open a new civil action.

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106

11

S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

**A.     The United States' Motion to Dismiss (Document No. 54).**

In its Motion, the United States argues that Plaintiff's <u>Bivens</u> action against Defendants Baynard, Warden Nelson, Lt. Landen, Dupris, Lowe, and Painter in their official capacities should be dismissed for failure to state a claim upon which relief can be granted and lack of subject matter jurisdiction. (Document No. 55.) The United States explains that "the Supreme Court refused to extend the judicially created <u>Bivens</u> remedy to include the government" and "suits against government employees in their official capacity are suits against the government." (<u>Id.</u>)

In Response, Plaintiff "asserts that there is a cause of action for a <u>Bivens</u> claim against the Defendants in their individual capacities and prays the court proceeds as such in allowing the <u>Bivens</u> claim to be heard as to the individual actions (under the color of Federal law) of each defendant." (Document No. 64.)

A <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate

violations of constitutional rights by federal actors. See <u>Bivens v. Six Unknown Named Agents of</u> <u>the Federal Bureau of Narcotics</u>, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); <u>See</u> <u>also</u> <u>Carlson v. Green</u>, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending <u>Bivens</u> to Eighth Amendment claims); <u>Davis v. Passman</u>, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending <u>Bivens</u> to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A <u>Bivens</u> action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law.[8] The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to <u>Bivens</u>. See

---

[8] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed. 2d 171 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reingold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

Based upon the foregoing, the undersigned finds that Plaintiff's Bivens action against Defendants Baynard, Nelson, Landen, Dupris, Lowe, and Painter in their official capacities should be dismissed. In Plaintiff's Bivens action, she names Defendants Baynard, Nelson, Landen, Dupris, Lowe, and Painter in their individual and official capacities. As stated above, Bivens claims are not actionable against defendants acting in their official capacities. See Meyer, 510 U.S. at 485; also see Doe v. Chao, 306 F.3d 170 (4th Cir. 2002)( "[A] *Bivens* action does not lie against either agencies or officials in their official capacities"). Accordingly, the Court recommends that the United States' Motion to Dismiss (Document No. 54) be granted.

**B.** **Defendant Baynard's Motion to Dismiss (Document No. 56.).**

In his Motion to Dismiss, Defendant Baynard argues that Plaintiff's Bivens claim is now barred by the FTCA's judgment bar rule. Specifically, Defendant Baynard contends that the District Court's March 31, 2011, Order dismissing Plaintiff's FTCA claim for failure to exhaust precludes Plaintiff's Bivens claim. Citing Freeze v. United States, 343 F.2d 477, 481 (M.D.N.C.), aff'd, 131 F.Appx. 550 (4th Cir. 2005), Defendant Baynard claims that Plaintiff's Bivens action against him is prohibited by the judgment bar of the FTCA, 28 U.S.C. § 2676. (Document No. 57.) Defendant Baynard explains that "[t]he Bivens complaint against [him] alleges the same subject matter as contained in the common law tort complaint which was dismissed by the court, to-wit: an alleged

assault on January 28, 2008." (Id.) Defendant Baynard, therefore, states that "the judgment bar of the FTCA, 28 U.S.C. § 2676, prohibits plaintiff's Bivens claim against defendant Baynard for the same conduct." (Id.)

In Response, Plaintiff argues that "[w]hen an FTCA claim is dismissed for lack of subject matter, rather than based on its merits, 28 U.S.C. 2676 does not apply as seen in Pesnell v. Arsenault, 490 F.3d 1158 (9th Cir. 2007)." (Document No. 62.) Plaintiff explains that "[n]o merits have been considered in the FTCA claim due to the fact that Plaintiff Kaufman has not exhausted her administrative remedies, and therefore, there was no ability for the court to judge the merits of the case." (Document No. 63.)

In his Reply, Defendant Baynard argues that "Plaintiff's reliance on Pesnell v. Arsenault, 490 F.3d 1158 (9th Cir. 2007), is misplaced as it was withdrawn and revised at 543 F.3d 993 (9th Cir. 2008)." (Document No. 65.) Defendant Baynard further states that "the holding is not controlling Fourth Circuit precedent." (Id., p. 1.) Defendant Baynard explains that "[t]his Circuit has addressed the scope of the judgment bar in two decisions: Unus v. Kane, 565 F.3d 103 (4th Cir. 2009), and Freeze v. United States, 343 F.2d 477, 481 (M.D.N.C.), aff'd, 131 F.Appx. 550 (4th Cir. 2005)." (Id.) Citing Unus and Freeze, Defendant Baynard contends that Plaintiff's Bivens action should be dismissed as barred by Section 2676. (Id., pp. 2 - 3.)

Title 28 U.S.C. § 2676 provides that "[t]he judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676. "[B]y reason of the same subject matter" has been interrupted to mean "arising out of the same actions, transactions, or occurrences." Serra v. Pichardo, 786 F.2d 237 (6th Cir. 1986),

15

cert. denied, 107 S.Ct. 103, 479 U.S. 826, 93 L.Ed.2d 53 (1986). The purpose of Section 2676 is to

prevent dual recovery and to avoid the waste of government resources in defending repetitive suits.

See Hallock v. Bonner, 387 F.3d 147, 154 (2nd Cir. 2004)(reversed on other grounds); Gasho v.

United States, 39 F.3d 1420, 1437 (9th Cir. 1994). Courts have consistently held that a judgment on

a FTCA claim bars a Bivens claim even if raised in the same suit. Unus v. Kane, 565 F.3d 103 (4th

Cir. 2009); Manning v. United States, 546 F.3d 430 (7th Cir. 2008); Harris v. United States, 422 F.3d

322 (6th Cir. 2005); Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d 840 (10th Cir.

2005); Freeze v. United States, 343 F.Supp.2d 477, 481 (M.D.N.C. 2004), aff'd, 131 Fed. Appx. 950

(4th Cir. 2005); and Sanchez v. Felts, Case No. 5:07-cv-0355 (S.D.W.Va. Sept. 26, 2011)(J.

Johnston)("[I]f a plaintiff elects to pursue a remedy under the FTCA to judgment, he risks dismissal

of any Bivens claim if the Bivens claim arises from the 'the same subject matter' and is against the

same 'employee whose act or omission gave rise to the claim.' This is true whether the FTCA claim

is brought before or after the Bivens claim, or if, as here, both claims are brought in the same suit.")

In Unus, the Fourth Circuit explained as follows:

> Litigants frequently face tough choices - choices that rarely come without
> consequence. In theses proceedings, the plaintiffs chose to pursue their claims
> against the federal agent defendants through Bivens as well as under the FTCA. As
> such, they risked having a judgment on the FTCA claims operate to bar their Bivens
> theories. As explained above, the district court properly awarded summary judgment
> to the United States on the FTCA claims. Those claims arose out of the "same
> subject matter" as the First and Fourth Amendment Bivens subclaims . . .. As such,
> the court's summary judgment award on the FTCA claims triggers the judgment bar
> provision of § 2676, and the plaintiffs' First and Fourth Amendment Bivens
> subclaims against the federal agent defendants are thus barred.

Unus, 565 F.3d at 122; also see Sanchez, Case No. 5:07-cv-0355("[W]hile Congress permitted

constitutional claims to be pursued in tandem with FTCA claims, the broad sweep of the language

of § 2676 indicates that Congress also determined that once a plaintiff elects to pursue the FTCA

claim to judgment, that strategic decision triggers application of § 2676 to 'any action' – including constitutional claims – against the federal employee whose conduct was at issue in the adjudicated FTCA claim.").[9] Further, it is generally recognized that Section 2676 makes no distinction between favorable and unfavorable judgments. Unus, 565 F.3d at 121-22; Harris, 422 F.3d at 334-35; Estate of Trentadue ex rel. Aguilar, 397 F.3d at 858; Freeze, 343 F.Supp.2d 481; Hoosier Bancorp of Ind., Inc. v. Rasmussen, 90 F.3d 180, 184-85 (7th Cir. 1996). Thus, a FTCA judgment, favorable or unfavorable, prevents a plaintiff from asserting a Bivens claim "arising out of the same actions, transactions, or occurrences."

First, the undersigned must consider whether the dismissal of Plaintiff's FTCA claim constitutes a judgment for purposes of Section 2676. Citing Pesnell v. Arsenault, 490 F.3d 1158 (9th Cir. 2007), Plaintiff contends that "for the judgment bar rule to apply, the judgment must be on the merits." See Pesnell v. Arsenault, 490 F.3d 1158 (9th Cir. 2007)(dismissal of the FTCA claim because the "action was not properly brought under the FTCA" did not result in a "judgment" within the meaning of the judgement bar rule). The Court first notes that Pesnell is a decision issued by the

_____

[9] In *Carlson v. Green*, 446 U.S. 14, 21-23, 100 S.Ct. 1468, 1472-74, 64 L.Ed.2d 15 (1980), the Supreme Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." Id., 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. In *Sanchez*, however, Judge Johnston explained that plaintiff's reliance upon *Carlson* was misplaced. Specifically, Judge Johnston stated as follows:

> [W]hile § 2679 of the FTCA expressly exempts constitutional claims from the FTCA's exclusiveness of remedy rule, Congress carved out no such exception for the FTCA's judgment bar rule. These two sections read in conjunction with one another serve different interests. Section 2679 exempts constitutional claims from the rule that the FTCA is the exclusive remedy for redress of common law torts committed by federal officials acting within the scope of their office and employment. Section 2676, on the other hand, operates as a "complete bar," once an FTCA judgment is adjudicate, to "any" other action against the federal employee involving the same subject matter.

17

Ninth Circuit, which is not binding upon this Court. Additionally, <u>Pesnell</u> was withdrawn and superceded by <u>Pesnell v. Arsenault</u>, 543 F.3d 1038 (9th Cir. 2008). In <u>Pesnell v. Arsenault</u>, 543 F.3d 993 (9th Cir. 2008), the Ninth Circuit clarified that "the judgment bar of § 2676 applies to 'any action by the claimant, by reason of the *same subject matter*, against the employee of the government whose act or omission gave rise to the claim.'" <u>Pesnell</u>, 543 F.3d at 1042(stating that plaintiff "is free to pursue his RICO claims only to the extent that he can do so without reliance on the same allegations" asserted in his FTCA action); <u>also see</u> <u>Janis v. United States</u>, 2011 WL 1258521 (E.D.Cal. Mar. 30, 2011)("Under § 2676, a *Bivens* action related to a previously dismissed FTCA claim may proceed only to the extent that it arises out of factual allegations different from those raised in the FTCA claim.")(citing, <u>Pesnell v. Arsenault</u>, 543 F.3d 1038 (9th Cir. 2008)); <u>Winnemem Wintu Tribe v. United States Dept. of Interior</u>, 725 F.Supp.2d 1119, 1150 (E.D.Cal. July 16, 2010)("Under § 2676 as interpreted in *Pesnell*, a *Bivens* action related to a previously dismissed FTCA claim may proceed only to the extent that it arises out of factual allegations different than those raised in the FTCA claim."). Thus, Plaintiff's reliance upon <u>Pesnell v. Arsenault</u>, 490 F.3d 1158 (9th Cir. 2007), is misplaced.

Moreover, two district courts within the Fourth Circuit, the Middle District of North Carolina and the Southern District of West Virginia, have determined that the dismissal of a FTCA claim for failure to exhaust constitutes a judgment for purposes of Section 2676. See <u>Freeze</u>, 343 F.Supp.2d 481; <u>Sanchez</u>, Case No. 5:07-cv-0355. In <u>Sanchez</u>, District Judge Johnston specifically addressed the issue as follows:

> The answer to the question of whether the judgment bar is triggered only by certain kinds of judgments (e.g., judgments on the merits, judgment based on lack of subject matter jurisdiction, or venue or failure to state a claim) lies once again with the plain terms of the statute. As discussed *supra*, the statute, by its terms, speaks of

18

"judgment." Congress did not modify, and thus did not limit, the word in any manner. While the congressional goal of precluding multiple recoveries is not an issue in this case because Plaintiff's FTCA claims have been dismissed, the other legislative purposes – that is, the goal of alleviating the "very substantial burden" on the Government in defending repetitive suits and encouraging claimants to bring tort claims against the United States rather than in *Bivens* actions against the individual employee are directly implicated. *See Hoosier v. Rasmussen*, 90 F.3d 180, 184-85 (7th Cir. 1996); *Gasho v. United States*, 39 F.3d 1420, 1437 (9th Cir. 1994). In light of the clarity and simplicity of the language of § 2676, as well as its context within the framework of the FTCA as a whole (and § 2679(b) in particular), the Court will, as it must, presume that Congress says in the statute what it means – and means in the statute what it says.

Sanchez, Case No. 5:07-cv-0355. Based on the foregoing, the undersigned finds that the District Court's dismissal of Plaintiff's FTCA claim for failure to exhaust constitutes a judgment for purposes of Section 2676.

Next, the Court must consider whether Plaintiff's FTCA and Bivens claims arise out of the same action or occurrence. The scope of Section 2676 precludes "a Bivens claim against a government employee when a judgment has been entered on a FTCA claim 'arising out of the same actions, transactions, or occurrences' as the Bivens claim." Unus, 565 F.3d at 122. Additionally, the judgment bar encompasses all claims that could have been brought with regard to the conduct at issue against the responsible government employee. Id. The Fourth Circuit explained as follows:

Indeed, the text of § 2676 plainly supports this interpretation of the judgment bar's scope. In order for § 2676 to have effect, it must encompass all of the claims that could have been brought with regard to the conduct at issue against the responsible "employee of the government." In its recent Manning decision, the Seventh Circuit explained that the plain language of § 2676 reveals that Congress intended for the judgment bar to operate against claims brought against a defendant for the conduct underlying the "action," as that term is used in §2676. See 546 F.3d at 433. The term "action," the court observed, "incorporates all elements of a civil suit, including the claims within that suit." Id.(citing Black's Law Dictionary 31 (8th Ed. 2004)). Thus, "[b]y acting as a bar to *any* action, § 2676 bars the claims within that action." Id. at 434. Because a claim is a lesser part of an action, all related claims must come within the ambit of § 2676. In contrast, under the plaintiffs' interpretation, § 2676 would bar "any action," but would not bar pieces of that action, i.e., certain individual claims.

19

Such a reading would be inconsistent with the text of the statute.

Id. In the instant case, Plaintiff's FTCA and Bivens claims are based upon the allegation that Defendant Baynard used excessive force and assaulted Plaintiff on January 28, 2008.[10] The Court, therefore, finds that Plaintiff's FTCA claim against Defendant Baynard arises out of the "same actions, transactions, or occurrences" as Plaintiff's Bivens claim." Accordingly, Plaintiff's Bivens claim against Defendant Baynard is precluded by the FTCA judgment bar, Section 2676, and Defendant Baynard's Motion to Dismiss (Document No. 56) should be granted.

**C.    Supervisory Liability Claim against Defendant Nelson.**

Defendant Nelson contends that Plaintiff's claim based upon the "alleged assault/use of force" should be dismissed for failure to state a claim. (Document No. 67, p. 10.) Defendant Nelson explains that "Plaintiff's Amended Complaint does not set out any specific involvement by Defendant Nelson in the alleged assault/use of force. Rather, Plaintiff, through the Amended Complaint, alleges new claims against Warden Nelson related to Plaintiff's transfer to SFF Hazelton." (Id.) Finally, Defendant Nelson argues that "[a]ny supervisory claim against Defendant Nelson would necessarily fail as a matter of law." (Id.)

In response, Plaintiff claims that "Warden Amber Nelson was Defendant Baynard's superior officer and as such is responsible for supporting the procedures and guidelines set by the Bureau of Prisons." (Document No. 69.) Plaintiff explains that "Defendant Nelson was in a position to correct Officer Baynard's unconstitutional behavior and was responsible to ensure that Defendant Baynard had received proper training in how to address inmates." (Id.)

---

[10]  The Court notes that Plaintiff does not appear to disagree that her FTCA and *Bivens* claims arise "out of the same actions, transactions, or occurrences."

20

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. * * * Because vicarious liability is inapplicable to Bivens . . ., a plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009); see also Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001), cert. denied, 537 U.S. 1045 , 123 S.Ct. 621, 154 L.Ed.2d 517 (2002)("In a Bivens suit there is no *respondeat superior* liability. * * * Instead, liability is personal, based upon each defendant's own constitutional violations." (Citation omitted.)). Liability can be premised, however, "on a recognition that supervisory indifference or 'tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984), cert. denied, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). A plaintiff must show "a pervasive and unreasonable risk of harm from some specified source and that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" Id. at 373. Evidence of a supervisor's continued inaction in the face of documented widespread abuses provides an independent basis for finding she either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of her subordinates. Id. A supervisor's mere knowledge of a subordinate's unconstitutional conduct is therefore not enough. Rather, Bivens liability may be imposed upon a supervisor only on the basis of purposeful "violations of his or her supervisory responsibilities." Ashcroft, 556 U.S. ___, 129 S.Ct. at 1949.

Essentially, Plaintiff alleges that Defendant Nelson violated her constitutional rights with respect to her failure to supervise Defendant Baynard. Specifically, Plaintiff contends that Defendant

21

Nelson is responsible for Defendant Baynard's use of excessive force because Defendant Nelson is his "superior officer." Plaintiff, however, has shown no personal involvement by Defendant Nelson and the record does not indicate any personal involvement by Defendant Nelson. There is no evidence that Defendant Nelson intentionally ignored or condoned any unconstitutional conduct by Defendant Baynard. Accordingly, Plaintiff's claim against Defendant Nelson under the doctrine of *respondeat superior* should be dismissed.

**D.     Exhaustion of Administrative Remedies.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[11] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires

---

[11] Title 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

   If an inmate exhausts administrative remedies with respect to some, but not all, of the claims she raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(overruled on other grounds), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved

23

within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that she has exhausted her administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which she did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted))

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an

24

inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve her complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment," Defendants Nelson, Landen, Dupris, Lowe, Painter, and Engleman argue that Plaintiff failed to "exhaust her administrative remedies on her new claims as required by law." (Document No. 67, pp. 5 - 8.) Defendants note that the "Amended Complaint against Defendants Nelson, Landen, Dupris, Lowe, Painter, and Engleman does not relate to the alleged assault by Officer Baynard on January 28, 2008." (Document No. 67, p. 4.) Defendants explain that Plaintiff's "new claims are primarily based on her transfer to another facility." (Id.) Specifically, Plaintiff alleges that Defendants: (1) unconstitutionally transferred her to SFF Hazelton, where she was placed in SHU;[12] (2) prohibited

---

[12] To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. *See Board of Regents v. Roth*, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which she has a legitimate claim of entitlement. *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(*quoting Roth*, 408 U.S. at 577, 92 S.Ct. 2709). An inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). In order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause, or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. *Id.*

Applying the principles set forth in *Sandin*, the undersigned finds Plaintiff's placement in segregation is neither a condition which exceeded her sentence in an unexpected manner nor creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Although Plaintiff appears to challenge the appropriateness for her 90 day placement in administrative segregation, nothing in the record indicates that Plaintiff's conditions of confinement in segregation were atypical or resulted in a significant hardship. *See Sandin*, 515 U.S. at 487, 115 S.Ct. at 2302(inmate's confinement in disciplinary segregation for one month did not amount to an atypical and significant hardship); *Tellier v. Fields*, 280 F.3d 69, 80 (2nd Cir. 2000)(inmate's confinement in segregation for 514 days without having a hearing resulted in confinement that was atypical and significant). Segregation, in and of itself, does not deprive an inmate of a liberty interest or create an atypical hardship. *See Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). Furthermore, the Due Process Clause does not give an inmate a liberty interest in a certain prison classification. *See Hewitt v. Helms*,

her medical records and personal property from being sent to SFF Hazelton; and (3) were aware of

Plaintiff's alleged injuries and effect that her placement in the Special Housing Unit would have on

her injuries.[13] (Id., pp. 4 - 5.) Plaintiff further alleges as follows: (1) Defendant Lowe failed to

_____

459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983)("transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); *Meachum* , 427 U.S. at 225, 96 S.Ct. at 2539(transfer of an inmate to a higher security facility does not violate a liberty interest); and *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994), *citing Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)(the federal Constitution "vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as challenged conditions or degree of confinement is within sentence imposed and is not otherwise violative of Constitution"). Thus, Plaintiff's claim of a liberty interest in remaining free of segregation or in the fact of her confinement in segregation is without merit. To the extent Plaintiff complains that Defendants misapplied the prison's policies concerning segregation, Plaintiff's claim must fail because due process is not implicated where there is no liberty interest. *See Petway v. Lappin*, 2008 WL 629998 (N.D.W.Va. Mar. 5, 2008)("due process complaints concerning either the misapplication of policy and procedures, or a lack of official rules and regulations, must fail" because the inmate had no protected liberty interest in avoiding segregation).

[13] Plaintiff contends that her placement in segregation resulted in cruel and unusual punishment prohibited under the Eighth Amendment. The Fourth Circuit stated as follows respecting the constitutionality of holding inmates in segregation for long periods of time in *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 472 (4th Cir. 1999), *cert. denied*, *Mickle v. Moore*, 528 U.S. 874, 120 S.Ct. 179, 145 L.Ed.2d 151 (1991):

> [T]he isolation inherent in administrative segregation or maximum custody is not itself constitutionally objectionable. Indeed, this court has noted that "isolation from companionship, restriction on intellectual stimulation[,] and prolonged activity, inescapable accompaniments of segregated confinement, will not render [that] confinement unconstitutional absent other legitimate deprivations." *Sweet v. South Carolina Dep't of Corrections]*, 529 F.2d at 861 (internal quotation marks omitted).

> Moreover, the indefinite duration of the inmates' segregation does not render it unconstitutional. ***[L]ength of time is "simply one consideration among many" in the Eighth Amendment inquiry. *Hutto v. Finney*, 437 U.S. 678, 687, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *see Sweet*, 529 F.2d at 861-62. ***Depression and anxiety are unfortunate concomitants of incarceration; they do not, however, typically constitute the "extreme deprivations . . . required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 8-9, 122 S.Ct. 995, 117 L.Ed.2d 156 (1992). A depressed mental state, without more, does not rise to the level of "serious or significant physical or emotional injury" that must be shown to withstand summary

respond to requests for information from Plaintiff's husband; (2) Defendant Landen refused to

interview inmate witnesses about the use of force; and (3) Defendant Engleman was unprofessional

when serving as a member of the Unit Discipline Committee concerning her disciplinary matter,

refused to consider inmate witness statements, and recommended an additional discipline charge be

included in the disciplinary action.[14] (Id.) Defendants contend that Plaintiff failed to exhaust her

administrative remedies concerning the above claims. (Id., pp. 7 - 8.) In support, Defendants submit

the Declaration of Ms. Sharon Wahl, a Paralegal for the Consolidated Legal Center at FCI Beckley.

---

judgment on an Eighth Amendment charge. *Strickland [v. Walters]*, 989 F.2d at 1381; *see Lopez v. Robinson*, 914 F.2d 486, 490 (4th Cir. 1990).

In view of the foregoing authority, Plaintiff clearly does not state facts in support of her Eighth Amendment claim that would entitle her to relief. Plaintiff alleges that her 90 day placement in administrative segregation was cruel and unusual because "movement from Plaintiff Kaufman's cell was a painful process on an injured shoulder," "Plaintiff Kaufman was not allowed to mingle with other prisoners," and "the cells were much more restrict than regular population." (Document No. 45, p. 14, 16, 18 - 19.) The undersigned notes that Plaintiff's confinement in segregation was for a short, specific period of time. Although Plaintiff may have been inconvenienced in a number of ways as a result of her placement in segregation, her allegations do not present a claim of constitutional magnitude for which relief can be granted.

[14] When a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is implicated, and minimal procedural guarantees are recognized. *Ponte v. Real*, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). The Supreme Court stated what procedure is required at a minimum in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding that an inmate cannot be deprived of a protected liberty interest in good-time credits without procedural due process). An inmate subject to administrative disciplinary sanctions impacting the duration of her sentence is entitled (1) to receive advance notice of charges no less than 24 hours before the disciplinary hearing, (2) to present evidence and witnesses in her defense as long as it does not jeopardize institutional safety or correctional goals, and (3) to receive a written statement of the evidence relied upon and the reasons for the disciplinary action. *Id.*, 418 U.S. at 563 - 569, 94 S.Ct. at 2978 - 2981. In the instant case, Plaintiff does not allege that her disciplinary sanction impacted the duration of her sentence. According to the record, a sanction of 30 day loss of phone privileges was imposed. (Document No. 66-1, p.15.) The Court further finds that inmates have no liberty interest in retaining telephone privileges. *See Redman v. Kilgore*, 2011 WL 830060, * 5 - 7 (S.D.W.Va. Jan. 14, 2011)(finding that deprivation of telephone privileges did not result in a violation of inmate's due process or Eighth Amendment rights.)

(Document No. 66-1.) Ms. Wahl declares that in her position she has access to SENTRY, the Bureau

of Prisons' online system containing, among other things, information about inmates' administrative

remedy filings. (Id., p. 1.) Ms. Wahl explains that she also has access to information regarding

inmates in the BOP's custody. (Id.) Specifically, Ms. Wahl states as follows in her Declaration (Id.,

pp. 1 - 2.):

> 4.    Plaintiff did not exhaust her administrative remedies regarding the new
>       claims contained in the Amended Complaint filed February 4, 2011. The only
>       administrative remedy she filed remotely related to any of the new claims
>       was a remedy stating she had not received her legal mail from FPC Alderson.
>
> 5.    On May 15, 2008, Plaintiff filed Remedy ID No. 493648-F1, noting she had
>       not received her legal mail from FPC Alderson. The Warden at her new
>       institution rejected the claim as untimely and she did not appeal the rejection.
>
> 6.    The Unit Discipline Committee (hereinafter "UDC") that Mr. Engleman was
>       part of referred Plaintiff's disciplinary matter to the Discipline Hearing
>       Officer (hereinafter "DHO"). The case was suspended pending investigation
>       into Plaintiff's allegation of excessive force, and later continued against
>       Plaintiff at her new institution.
>
> 7.    The new UDC found that Plaintiff admitted to the charge of Refusing to
>       Obey an Order and did not refer the case to the DHO, but sanctioned her to
>       30 days loss of phone privileges, suspended for 180 days of clear conduct.

In response, Plaintiff merely states that she filed administrative remedies concerning the "use

of excessive force and all new claims are related to that incident, in that each one of them is a direct

reaction to the incident involving excessive force." (Document No. 69.) Plaintiff explains that she

was "under the belief that all complaints related to an incident can be covered by one administrative

remedy." (Document No. 70, p. 1.) Plaintiff further argues that "[s]ince all the defendants' roles

were directly related to that offense, as pointed out in her amended complaints submitted in February

(Documents 47, 43, 45), those complaints should be included and accepted by this court." (Id.)

The Court finds that Plaintiff failed to fully exhaust her Bivens claims against Defendants

Nelson, Landen, Dupris, Lowe, Painter, and Engleman. The Court first notes that Plaintiff does not dispute that she failed to raise and fully exhaust her administrative remedies concerning her claims against the foregoing Defendants. Plaintiff merely states that she filed administrative remedies concerning the "use of excessive force and all new claims are related to that incident, in that each one of them is a direct reaction to the incident involving excessive force." Section 542.14(c)(2) provides that an "inmate shall place a single complaint or a reasonable number of closely related issues on the form. . . . For DHO and UDC appeals, each separate incident report number must be appealed on a separate form." 28 C.F.R. § 542.14(c)(2). A review of the record reveals that Plaintiff's prior Administrative Remedy Request concerned Plaintiff's sole complaint that Defendant Baynard used excessive force. (Document No. 17-1, p. 10.) Plaintiff's argument that exhaustion of her claim concerning the use of excessive force by Defendant Baynard also resulted in the exhaustion of any claim or future issues related to Defendant Baynard's alleged use of excessive force, is incorrect. Although an inmate can raise "a reasonable number of closely related issues" in a Request of Administrative remedy, the inmate must raise the issue in such a way that prison officials are put on notice of the claim. See Moore, 517 F.3d at 725 ("a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively")(citing, Woodford, 548 U.S. at 87, 126 S.Ct. at 2384.); also see Jones, 549 U.S. at 204, 127 S.Ct. at 914(Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being haled into court.). The record is void of any evidence that Plaintiff filed an administrative remedy request concerning her above claims against Defendants Nelson, Landen, Dupris, Lowe, Painter, and Engleman. Accordingly, Plaintiff's Bivens claims against Defendants Nelson, Landen, Dupris,

Lowe, Painter, and Engleman should be dismissed for failure to exhaust. The undersigned finds it unnecessary to consider the other reasons which Defendants Nelson, Landen, Dupris, Lowe, Painter, and Engleman have submitted for dismissal.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the United States' Motion to Dismiss (Document No. 54.), **GRANT** Defendant Baynard's Motion to Dismiss (Document No. 56.), **GRANT** Defendants Nelson, Landen, Dupris, Lowe, Painter, and Engleman's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document No. 66.), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985);

Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: February 3, 2012.

R. Clarke VanDervort
United States Magistrate Judge